669 So.2d 1233 (1995)
Joseph W. PATTAN, III
v.
Wilson FIELDS.
No. 95 CE 1936.
Court of Appeal of Louisiana, First Circuit.
September 26, 1995.
*1235 J. Kevin Kimball and C. Jerome D'Aquila, New Roads, for Joseph W. Pattan, III, Plaintiff-Appellee.
Theodore (Ted) L. Jones, Steven E. Adams and Ernest Johnson, Baton Rouge, for Wilson Fields, Defendant-Appellant.
Joel G. Porter, Baton Rouge, for Doug Welborn, Clerk of Court, East Baton Rouge Parish.
Before LOTTINGER, C.J. and WATKINS, SHORTESS, CARTER, LeBLANC, FOIL, GONZALES, WHIPPLE, FOGG, PITCHER, PARRO, KUHN and FITZSIMMONS, JJ.
PER CURIAM.
This case has been remanded to this court by the Louisiana Supreme Court with instructions to render a judgment by a majority of the elected judges of this court. Joseph W. Pattan, III v. Wilson Fields, 95-2338, 93-2341, 95-2342 (La. 9/25/95); 661 So.2d 142.
On September 21, 1995, this court sat en banc pursuant to La.R.S. 18:1409. This court is composed of thirteen elected judges and one pro tempore judge participated in the en banc sitting.[1] Six of the judges voted to affirm the decision of the trial court, and five judges voted to reverse that decision. However, in the rush of time to render a decision and hand same down, the initials of one of the dissenting judges inadvertently does not appear on the final decision of the court.
As per instructions from the supreme court on remand, this court is "to render a judgment by a majority of the elected judges." Thus, we conclude that the pro tempore judges should not participate in this statutorily mandated en banc sitting. Accordingly, all thirteen elected judges participate in this decision.
This is an action objecting to the candidacy of defendant who qualified as a candidate for State Senator, Senatorial District No. 15. Plaintiff, Joseph W. Pattan, III, filed this suit to disqualify defendant, Wilson Fields, as a candidate for election to the State Senate, alleging Fields has not been actually domiciled for the preceding year in Senatorial District No. 15, the legislative district from which he seeks election. Also made a defendant is the Honorable Doug Welborn, Clerk of Court of East Baton Rouge Parish.
The trial court 1) overruled the declinatory exception raising the objection of improper venue filed by Doug Welborn, Clerk of *1236 Court; 2) overruled the peremptory exception raising the objection of no right of action filed by Fields, and 3) disqualified defendant, finding he did not meet the domicile requirements set forth in Article 3, Section 4 of the Louisiana Constitution of 1974.
Fields has appealed and assigns as error the following: 1) the trial court erred in denying his peremptory exception raising the objection of no right of action at the time it was argued; 2) the trial court erred in overruling the peremptory exception of no right of action since Pattan was not properly pardoned; 3) the trial court erred in ruling that he was not "actually domiciled" in State Senatorial District No. 15 for one year prior to qualifying as a candidate.
Welborn has also appealed contending the trial court erred, in failing to grant the declinatory exception raising the objection of improper venue pursuant to LSA-R.S. 13:5104(B) and in dismissing the declinatory exception raising the objection of improper venue prior to the hearing.
Pattan filed a motion to dismiss the appeal on the merits as well as a motion to dismiss the appeal of Welborn as to the issue of venue.

DISMISSAL OF APPEAL ON ISSUE OF VENUE
The judgment dismissing Welborn's declinatory exception raising the objection of improper venue was signed on September 16, 1995, a Saturday. The motion for the appeal was filed on September 17, 1995, a Sunday, and was signed by the trial court on September 19, 1995, a Tuesday. In seeking the dismissal of the appeal, appellee argues the order of appeal should have been signed on September 18. However, inasmuch as the motion for the appeal was filed timely, we decline to dismiss the appeal.
On appeal, Welborn contends the trial court erred in failing to grant the declinatory exception raising the objection of improper venue pursuant to LSA-R.S. 13:5104(B).
LSA-R.S. 18:1402 provides in pertinent part:
The following persons are proper parties against whom actions may be instituted in actions objecting to candidacy and in election contests: (1) the person whose candidacy is objected to; ... (5) the official before whom the person whose candidacy is objected to had qualified.
Therefore, Doug Welborn is a proper party defendant because he is the official before whom Wilson Fields qualified.
LSA-R.S. 18:1404 provides that if an action objecting to the candidacy involves a district office it shall be filed in the district court for any parish included in the district for the office the action involves. A portion of the 15th Senatorial District lies within the Parish of West Baton Rouge; therefore, West Baton Rouge is a proper venue.

DISMISSAL OF APPEAL ON THE MERITS
In seeking the dismissal of the appeal on the merits, appellee contends an incorrect return day was provided by the trial court in Fields' appeal in that rather than a three day return day a five day return day was ordered. Be this as it may, the record was lodged in this Court on September 20, 1995, and though this may also be late, any error would be imputable to the trial court, and thus we decline to dismiss on those grounds.

NO RIGHT OF ACTION
Fields contends the trial court erred in denying his peremptory exception raising the objection of no right of action at the time it was argued because Pattan was not properly pardoned.
The objection of no right of action asserted in a peremptory exception raises the question of whether a remedy afforded by law can be invoked by the plaintiff and determines if the plaintiff has a right or legal interest in the subject matter of the suit. Fulford v. Green, 474 So.2d 972, 975 (La.App. 1st Cir.1985).
If the peremptory exception has been pleaded in the answer, or subsequently, but at or prior to the trial of the case, it shall be tried and disposed of either in advance of or on the trial of the case. LSA-C.C.P. art. 929. The trial court entertained the peremptory *1237 exception before moving to the merits of the case. Fields filed the exception alleging the plaintiff was not a qualified elector within the meaning of LSA-R.S. 18:1401(A). He submitted with the exception, a certified copy of the docket sheet from United States of America v. Joseph Pattan, Case number 88-035 evidencing plaintiff's federal felony conviction. In response to the exception, defendant offered and filed into evidence a pardon received by plaintiff from the State of Louisiana dated July 7, 1992. Counsel for defendant stated, he would substitute a certified copy upon receipt. Additionally, defendant offered into evidence a print out from the West Baton Rouge Parish Registrar of Voters Office showing that Pattan is a registered voter in West Baton Rouge Parish and registered to vote in Senatorial District No. 15.
Article 1, Section 20 of the Louisiana Constitution of 1974, provides in pertinent part:
Full rights of citizenship shall be restored upon termination of state and federal supervision following conviction for any offense.
Restoring "full rights of citizenship" upon termination of state or federal supervision under Article 1, Section 20 does not contemplate restoration of status of innocence nor does it erase the fact of the conviction. See State v. Selmon, 343 So.2d 720, 722 (La.1977). This section contemplates only the restoration of basic rights of citizenship such as the right to vote, work or hold public office. State v. Adams, 355 So.2d 917, 922 (La.1978); State v. Haynes, 514 So.2d 1206, 1211 (La.App. 2nd Cir.1987). Thus, plaintiff was a qualified elector at the time this suit was filed.

DOMICILE
Fields contends the trial court erred in finding he was not actually domiciled for the preceding year in State Senatorial District No. 15.
Generally, the laws governing the conduct of elections should be liberally construed so as to promote rather than defeat a candidacy. Arnold v. Hughes, 621 So.2d 1139, 1140 (La.App. 1st Cir.1993). Any doubt as to the qualifications of a candidate should be resolved in favor of permitting the candidate to run for public office. Arnold v. Hughes, 621 So.2d at 1141.
LSA-Const. Article 3, Section 4, requires that a candidate for the legislature must have been "actually domiciled for the preceding year" in the district from which he or she seeks election. The phrase "actually domiciled" as used in the constitution requires that one holding legislative office have a real rather than fictitious domicile in the area represented. Messer v. London, 438 So.2d 546, 547 (La.1983).
Residence and domicile are not synonymous, and a person can have several residences, but only one domicile. Messer v. London, 438 So.2d at 547; Autin v. Terrebonne, 612 So.2d 107, 108 (La.App. 1st Cir. 1992). A person may maintain more than one residence, and the fact that one is maintained for political purposes does not itself prevent residence from being actual and bona fide. Autin v. Terrebonne, 612 So.2d at 108.
Domicile is defined in LSA-C.C. art. 38 as follows:
The domicile of each citizen is in the parish wherein he has his principal establishment.
The principal establishment is that in which he makes his habitual residence; if he resides alternately in several places, and nearly as much in one as in another, and has not declared his intention in the manner hereafter prescribed, any one of the said places where he resides may be considered as his principal establishment, at the option of the persons whose interests are thereby affected.
Domicile is a person's principal domestic establishment, as contrasted to a business establishment. Messer v. London, 438 So.2d at 547; Broussard v. Romero, 607 So.2d 979, 980 (La.App. 3rd Cir.1992). In other words, a person's domicile is his principal establishment wherein he makes his habitual residence and essentially consists of two elements, namely residence and intent to remain in place. LSA-C.C.P. art. 1234; Veillon v. Veillon, 517 So.2d 936, 940 (La. App. 3rd Cir.), writ denied, 519 So.2d 105 *1238 (La.1987). Further, a person's domicile of origin continues until another is acquired. Blackwell v. Blackwell, 606 So.2d 1355, 1358 (La.App. 2nd Cir.1992).
LSA-C.C. art. 41 addresses a change of domicile and provides as follows:
A change of domicile from one parish to another is produced by the act of residing in another parish, combined with the intention of making one's principal establishment there.
See Succession of Caprito, 468 So.2d 561, 563 (La.1985).
A change in domicile requires the physical presence of the individual in the new domicile coupled with a present intent to permanently reside in the new domicile. Blackwell v. Blackwell, 606 So.2d at 1358.
Proof of intent to change domicile is governed by LSA-C.C. arts. 42 and 43. Intention to change domicile is proved by an express declaration of it before the recorders of the parishes, from which and to which he shall intend to remove. This declaration is made in writing, is signed by the party making it, and registered by the recorder. LSA-C.C. art. 42. In case this declaration is not made, the proof of this intention shall depend upon circumstances. LSA-C.C. art. 43. In other words, an intention to change domicile may be proved by an express declaration in writing registered in the parishes of the old and new residences or, in the absence of a declaration, by the circumstances surrounding the residence. Autin v. Terrebonne, 612 So.2d at 108.
In establishing domicile, intent is based on the actual state of facts and not what one declares them to be. Sheets v. Sheets, 612 So.2d 842, 844 (La.App. 1st Cir. 1992). The circumstances indicating establishment of a domicile include where a person sleeps, takes his meals, has established his household, and surrounds himself with family and the comforts of domestic life. Sheets v. Sheets, 612 So.2d at 844. Further, a change in domicile for the purposes of qualifying for public office occurs when there is a change in actual residence accompanied by an intention to make a new principal establishment or home. LSA-C.C. arts. 42 and 43; Messer v. London, 438 So.2d at 547; Autin v. Terrebonne, 612 So.2d at 108.
There is a presumption against change of domicile. Autin v. Terrebonne, 612 So.2d at 108; Blackwell v. Blackwell, 606 So.2d at 1358; Chandler v. Brock, 510 So.2d 778, 779 (La.App. 2nd Cir.1987). However, when a person holds public office, the law presumes his domicile continues in the place where he exercises his public functions. Messer v. London, 438 So.2d at 547.
The burden of proof is on the party contesting candidacy. Messer v. London, 438 So.2d at 548; Slocum v. DeWitt, 374 So.2d 755, 758 (La.App. 3rd Cir.), writ denied, 375 So.2d 1182 (La.1979). Moreover, in a suit objecting to a candidacy on the ground the defendant was unqualified to be a candidate because of not having been actually domiciled in the district for one full year preceding the time for qualification, the burden of proof is on the contestant. Autin v. Terrebonne, 612 So.2d at 108; Blackwell v. Blackwell, 606 So.2d at 1358. The question of domicile is one of intention as well as fact, and where it appears a domicile has been acquired in another district, the party seeking to show it has been changed to a new district must overcome the legal presumption it has not been changed by positive and satisfactory proof of the establishment of a domicile as a matter of fact with the intention of remaining in the new district and of abandoning the former domicile. Succession of Caprito, 468 So.2d at 563.
Domicile is an issue of fact to be determined on a case-by-case inquiry. Succession of Barnes, 490 So.2d 630, 631 (La. App. 2nd Cir.1986); Eagle v. Eagle, 477 So.2d 1293, 1294 (La.App. 3rd Cir.1985); Calix v. Souza, 467 So.2d 1369, 1370 (La.App. 5th Cir.1985). As in any case, the factual findings of the trial court will not be disturbed on appeal unless clearly wrong. Autin v. Terrebonne, 612 So.2d at 108. See Dumas v. Jetson, 462 So.2d 266, 268 (La. App. 1st Cir.1984); Chandler v. Brock, 510 So.2d at 779.
*1239 The Louisiana Supreme Court has enunciated a two-part test for the reversal of a fact finder's determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong.
Maranto v. Goodyear Tire & Rubber Co., 94-2603, 94-2615 p. 7 (La. 2/20/95); 650 So.2d 757, 762; Theriot v. Lasseigne, 93-2661 p. 5 (La. 7/5/94); 640 So.2d 1305, 1310; Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). See Mart v. Hill, 505 So.2d 1120, 1127 (La. 1987).
This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's findings. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882; Smith v. Louisiana Health and Human Resources Administration, 93-1434 p. 10 (La.App. 4th Cir. 5/18/94); 637 So.2d 1177, 1185, writ denied, 94-1617 (La. 10/7/94); 644 So.2d 634.
Nevertheless, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882; Smith v. Louisiana Health and Human Resources Administration, 637 So.2d at 1185. Even though an appellate court may feel that its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Shelton v. Wall, 614 So.2d 828, 832 (La.App. 2nd Cir.1993). However, an appellate court is not required, because of the foregoing principles of appellate review, to affirm the trier of fact's refusal to accept as credible uncontradicted testimony or greatly preponderant objectively-corroborated testimony where the record indicates no sound reason for its rejection and where the factual finding itself has been reached by overlooking applicable legal principles. Mart v. Hill, 505 So.2d at 1127. Where the documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Ferrell v. Fireman's Fund Insurance, 94-1252 p. 5 (La. 2/20/95); 650 So.2d 742, 746; Theriot v. Lasseigne, 640 So.2d at 1313; Rosell v. ESCO, 549 So.2d at 844-45; Smith v. Louisiana Health and Human Resources Administration, 637 So.2d at 1185; Lancon v. State Farm Mutual Insurance Company, 94-256 p. 5 (La.App. 3rd Cir. 10/5/94); 645 So.2d 692, 695, writ denied, 95-0153 (La. 3/17/95); 651 So.2d 272.
The Louisiana Supreme Court has emphasized that "the reviewing court must always keep in mind that `if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" Housley v. Cerise, 579 So.2d 973, 981 (La.1991). However, in Ferrell v. Fireman's Fund Insurance, 650 So.2d at 746, the Louisiana Supreme Court qualified its opinion in Stobart v. State, Department of Transportation and Development, 617 So.2d 880 (La.1993), noting:
Our opinion in Stobart v. State, 617 So.2d 880 (La.1993), was not intended to change that synthesis or to make the scope of appellate review of facts any more limited than described in Rosell, Arceneaux [v. Domingue, 365 So.2d 1330 (La.1978)], Canter [v. Koehring Co., 283 So.2d 716 (La.1973)], et al., supra. As we stated in Ambrose v. New Orleans Police Ambulance Service, 639 So.2d 216, 221 (La.1994), "it was not our purpose in [Stobart] to mandate that the trial court's factual determinations *1240 cannot ever, or hardly ever, be upset."
In the instant case, Fields has lived at three residences pertinent to the issues presented in this matter. In 1985, Fields resided with his mother at 6359 Mickens Road, Baton Rouge, Louisiana. The Mickens Road address is located in the 15th Senatorial District. Commencing in 1986, Fields resided at 5665 McClelland Drive, Baton Rouge, Louisiana while attending Southern University. The McClelland Drive address is located in the 14th Senatorial District. On December 27, 1994, Fields purchased a home at 4330 Victoria Drive. The following month, in January of 1995, Fields moved from his McClelland Drive apartment to Victoria Drive. The Victoria Drive address is located in the 15th Senatorial District.
On September 5, 1995, Fields filed a Notice of Candidacy for the office of State Senator in the 15th Senatorial District. We note, however, that Fields' candidacy for the office of State Senator in the 15th Senatorial District is not predicated on his domicile at the Victoria Drive address in that it is clear that he has not been domiciled at that address for the requisite one-year period. Rather, Fields' candidacy is based upon his domicile at the Mickens Road address.
Therefore, the salient issue before the trial court was whether Fields was domiciled at the Mickens Road address or the McClelland Drive address prior to his purchase of the Victoria Drive property.
A review of the entire record reveals that, at all times, pertinent hereto, Fields' domicile of origin was the Mickens Road address. The evidence presented at trial, including the testimony and documentary evidence, reveals that Wilson Fields was domiciled with his mother from birth until the age of four, in Port Allen, Louisiana. In approximately 1982, the Fields moved to Washington Avenue and remained there until 1985, when they moved to the Mickens Road address. Under the clear language of the law, that domicile continued until Fields acquired another domicile. However, our inquiry does not end here.
We must examine the record to determine whether Fields subsequently changed his domicile from the Mickens Road address to the McClelland Drive address.
The evidence presented at trial, including the testimony and documentary evidence, reveal that in 1986, Fields enrolled at Southern University. At that time, Fields secured an apartment at McClelland Drive address. While enrolled at Southern University, Fields' school records, as well as his student loan documentation, indicate that Mickens Road was his permanent mailing address. However, other school documents showed Fields's address as the McClelland Drive address.
On September 5, 1991, Fields changed his voter's registration from the Mickens Road address to the McClelland Drive address. Thereafter, on August 18, 1992, Fields qualified for a seat on the Metro Council using the McClelland Drive address. Although Fields had to be a resident of the district and a qualified voter in the district to seek the council seat, because the Mickens Road address and the McClelland Drive address are in the same Metro Council District, it would have been unnecessary for Fields to change his voter registration to qualify as a candidate for the council. Moreover, in November, 1992, Fields notified the administrative office of the Metro Council to forward city council mail to the McClelland Drive address. Further, Fields' employment records with the Metro Council, including his employment eligibility verification, employees' retirement documentation, and other personnel records, indicate that Fields' address was McClelland Drive.
The trial court, upon consideration of all of the evidence, found that plaintiff carried the burden of proof that Fields had no intent to continue his domicile at 6539 Mickens Road (in Senatorial District No. 15), but, intended to, and did, change his domicile to 5665 McClelland Drive (in Senatorial District No. 14). This factual finding was based, in part, upon some harsh credibility determinations with regard to the testimony and consideration of the documentary evidence.[2]
*1241 After reviewing the entire record, we find that a reasonable factual basis exists for this factual finding and that the trial judge was not manifestly erroneous. Although Fields was an undergraduate student at Southern University when he began residing at the McClelland Drive address, he continued to reside there upon graduation and until he purchased the Victoria Drive property. While his initial relocation to McClelland Drive and his school records reflect his status as a student, his subsequent actions reflect the conscious decision of an adult to permanently reside at McClelland Drive. Fields intentionally changed his voter registration from his domicile of origin to the McClelland Drive address. He subsequently sought and was elected to a public office and exercised his public functions based upon his residence at the McClelland Drive address. The establishment of this residence, coupled with his actions subsequent to his undergraduate studies evincing an intent to permanently reside at the McClelland Drive address, demonstrate that Fields changed his domicile from Mickens Road to McClelland Drive. We have extreme difficulty with the proposition that a person can register to vote, run for and hold public office, declaring a particular residence, and then deny that residence was ever his domicile.
The courts of this state have traditionally viewed a conscious choice of voter registration as one of the principal determinants of domicile. To digress from this position would open the floodgates to challenges to domicile, not only in election cases, but in all other contexts as well. Moreover, an affirmation of the trial court judgment will not thwart the liberal construction of laws governing the conduct of elections to promote candidacy; it simply enforces the legal requirement that public officials be domiciled in the district in which they seek to hold office. If all the requirements of domicile are to be removed from the law, it must be done by the legislature of the State of Louisiana and not by the courts.
For these reasons, we are of the opinion that the judgment of the trial court should be affirmed and that Fields should be cast for all costs.
KUHN, J., concurs and assigns additional reasons.
LOTTINGER, C.J., concurs in part and dissents in part with reasons.
SHORTESS, PITCHER and WHIPPLE, JJ., concur in part and dissent in part for reasons assigned by LOTTINGER, C.J.
GONZALES, J., dissents.
KUHN, Judge, concurring.
While I must concur in the result, I cannot state that I do so wholeheartedly. Though reviewing courts may disagree with the decisions of a trial court, the standard of review on questions of fact remains that created with the adoption of the manifest error rule by courts of this state (Stobart). Although it may be argued that there are actually no disputed facts in this case, ultimately the questions of the candidate's intent with regard to domicile have been determined by the trier of fact. Determination of domicile is resolution of a question of fact. Once this has been accomplished; the manifest error standard of review exists to be applied to determinations of intent evidenced by the facts.
It may also be argued that the election laws of the state are drafted so as to encourage candidacy and should be so interpreted. However, we are a society governed by law and legal principles cannot be sacrificed on a case by case basis nor abandoned simply because this is an election contest suit as opposed to a tort or workman's compensation suit. While the argument of encouraging candidacy may be logical, such a position would not alter the standard of review by this court. If the standard of review is different *1242 in election disputes, then the courts should and must clearly state such.
WATKINS, LeBLANC, CARTER, FOGG, PARRO and FITZSIMMONS, Judges, specially concurring.
We agree with the majority and additionally set forth that it is very clear Fields changed his domicile to McClelland Drive where it remained until he purchased the Victoria Drive home. The dissent refers to "facts seized upon by the majority." The "facts seized upon by the majority" are clear factual findings of the trial court supported by documentary evidence and assessment of the credibility of witnesses.
As an intermediate appellate court, we must always be mindful of the division of functions of the trial and appellate courts wherein findings of fact of the trial court cannot be reversed unless the findings are manifestly erroneous and the assessment of credibility of witnesses is the function of the trier of fact and not the appellate court.
We agree with Judge Kuhn's concurring opinion which sets forth that, unless we are to apply a new and totally different standard of review for this type of case, we must affirm the judgment of the trial court.
There is more than ample evidence in the record making obvious the fact that Fields' domicile was McClelland Drive until he purchased the Victoria Drive home. We are not permitted under the appellate standard of review to reverse these factual findings and credibility determinations.
LOTTINGER, Chief Judge, concurring and dissenting.
I concur in the majority opinion in the dispositions of the motions to dismiss appeals, the peremptory exception raising the objection of no right of action, the declinatory exception raising the objection of improper venue and the handling of this matter on remand as per instructions from the Louisiana Supreme Court. However, I respectfully dissent from the affirmance of the trial court in the disqualification of Wilson Fields as a candidate for the office of State Senator in the 15th Senatorial District.
As stated by the majority, election laws should be liberally construed so as to promote rather than defeat candidacy. Any doubts as to qualifications should be resolved in favor of the candidacy. And, the burden of proof is on the party contesting candidacy. Inasmuch as there is a presumption against a change in domicile, and the burden of proof is on the party contesting candidacy, I conclude that the burden of proof is greater than in an ordinary civil proceeding. Thus, as a matter of law I find that plaintiff failed to prove a change of domicile on the part of the defendant, Wilson Fields.
All facts considered, absent a change in voter registration from Mickens Road to McClelland Drive, no one can question that as a college student, Fields' domicile was that of his mother on Mickens Road. Should a change of voter registration alone for a college student living away from home indicate a change of domicile? I think not, otherwise college students would be discouraged from registering at the place where they go to school for fear of losing domicile.
Since both the Mickens Road address and the McClelland Drive Address were in the Metro Council District from which Fields was elected to the Metro Council, there was no need for Fields to change his voter registration except for convenience or political wisdom. He could have continued his voter registration at Mickens Road and still been elected to the Metro Council. Neither a change in registration nor election to the Metro Council evidences an intent to change his domicile from Mickens Road. Importantly we should not lose sight of the fact that during this entire time frame, Fields was a college student. Once he graduated from college, he took and passed the bar examination, and within a reasonable time period thereafter, he purchased a house on Victoria Drive to establish a new domicile. The Mickens Road address as well as the house *1243 purchased and located on Victoria Drive are within the 15th Senatorial District. Thus, I conclude that since plaintiff did not rebut the presumption that Fields did not change his domicile from within the 15th Senatorial District, plaintiff's suit must be dismissed. Fields did not change his domicile, and thus has been "actually domiciled for the preceding year" in the 15th Senatorial District. Therefore, I would reverse the judgment of the trial court.

ATTACHMENT

Joseph W. Pattan, III

versus

Wilson Fields

Number 27,037 Div "D"

18th Judicial District Court

Parish of West Baton Rouge

State of Louisiana

REASONS FOR JUDGMENT
The Court finds the following facts. Wilson Fields, hereinafter referred to as Fields or defendant, had his domicile with his mother since birth until the age of four in Port Allen, Louisiana, at which time they moved to Mary Street in Baton Rouge, Louisiana. In approximately 1982 they moved to Washington Avenue and stayed until 1985 when they moved to 6359 Mickens Road, Baton Rouge, Louisiana. Fields became a student at Southern University in 1986 and secured an apartment at 5665 McClelland Drive in Baton Rouge, Louisiana on May 15, 1989 at Apartment 202, which he co-leased with Richard Lands, and then moved into Apartment 233 on June 1, 1990. Fields changed his voting registration to the McClelland Drive address on September 5, 1991. On August 18, 1992, Fields qualified for City Council using his McClelland Drive address. In November of 1992, Mr. Fields notified the administrative office of the Metro Council that he wished to receive all mail for city council business at the McClelland Drive address.
On December 27, 1994, Fields purchased a home at 4330 Victoria Drive. On January 27, 1995, Fields moved from his McClelland Drive apartment to the Victoria Drive home. Electrical utilities were transferred to Victoria Drive on January 30, 1995. Less than one year later, on September 5, 1995, Mr. Fields filed a Notice Of Candidacy for the office of State Senator in the 15th Senatorial District.
The 6539 Mickens Road address is located in the 15th Senatorial District. The 5665 McClelland Drive address is located in the 14th Senatorial District and the 4330 Victoria Drive address is located in 15th Senatorial District.
The main issue in this case is whether Mr. Fields was domiciled at the McClelland Drive address or at the Mickens Road address until he purchased the home on Victoria Drive.
Article 38 of the Louisiana Civil Code defines a person's domicile as follows:
"The domicile of each citizen is in the parish wherein he has his principal establishment.
The principal establishment is that in which he makes his habitual residence; if he resides alternately in several places, and nearly as much in one as in another, and he has not declared his intention in the manner hereafter prescribed, any one of the places where he resides may be considered as his principal establishment, at the option of the persons whose interest are thereby affected."
The Civil Code further provides that an intent to change ones domicile can be proven by an express declaration in writing signed by the party making it and registered by the recorder of the parish. C.C. Art. 42.
Article 43 of the Louisiana Civil Code provides that when such a declaration is not *1244 made, proof of intention to change ones domicile shall depend upon circumstances.
The Court considered the testimony of all witnesses and of facts proven from said testimony and concluded that Mr. Fields had indeed changed his domicile to the McClelland Drive address in Senatorial District 14 until December 27, 1994, when he purchased the home at the Victoria Drive address.
The facts considered by the Court included testimony that Fields was domiciled at the Mickens Road address. That he received mail pertaining to college, law school and student loans at the Mickens Road address. That he had also left personal items at the Mickens Road address when he moved to McClelland Drive. Testimony showed that his vehicle registration on 4/15/94 was addressed at Mickens Road. Testimony by Mr. Fields indicated that his previous drivers license had a Mickens Road address. He and his brother, Cleo Fields, further testified that the Mickens Road address was his domicile that he ate, washed clothes, and visited his family at that address.
Defendant's testimony was out weighed because of several factors. The Court specifically noted that when he was being cross-examined by plaintiff counsel he had his guard up and was assisted by his attorneys by wordy objections which gave him answers or hints to assist him in answering questions. When he was questioned by his own counsel he was asked numerous leading questions which also gave him answers or hints. This occurred even after being warned by the Court several times. In fact, the Court threatened sanctions against the attorney at one point in the proceedings. Defense counsel's actions were clearly a transparent attempt to coach the defendant while he was testifying. Additionally, the Court noted on two occasions individuals in the audience from the Fields entourage nodding and shaking their heads obviously indicating answers to questions propounded by plaintiff's counsel. Such actions by the defense attorneys and friends of Mr. Fields destroyed his credibility.
A specific incident occurred during the trial beginning on page 113 of the transcript, line 25, through page 117 of the transcript, when the Court asked the defendant a few questions. The Court asked the defendant if he resided on Mickens Road. He stated he resided at 4330 Victoria Drive. The Court then asked the defendant if he had resided at the Mickens address during the last four or five years. He stated that he visited there occasionally and resided at 5665 McClelland Drive. The Court further asked him if he ever resided at the Mickens Road address. He answered he did. He stated that he resided there from when they first purchased that home until the time he moved into the apartment. The Court further asked on line 13 of page 114 "Since that time, you haven't resided there?" He answered "No." The Court notes that a part of the definition of a person's domicile in Article 38 of the Louisiana Civil Code states that "The principal establishment is that in which he makes his habitual residence ..." Mr. Fields clearly answered the Court's question by stating that he had not resided at the Mickens Road address since he moved into the apartment on McClelland Drive. The Court notes that if one does not reside at a residence he can not be domiciled at said residence. Domicile is a person's principal residence. A person can have many residences but only one domicile and that domicile has to be one of his residences. The Court considered the defendant's education in relation to the answers given by him in response to the Court's questions. Normally the Court would not consider those answers to be of any great moment. However, because of the defendant's high level of education and because he had so recently finished law school it is inconceivable that he did not know the consequences of his answers.
After Mr. Fields made such a devastating statement it became obvious to the Court that he had forgotten what he had been coached. This became more evident when his attorney, Mr. Johnson, attempted to ask numerous leading questions to his client in an attempt to have his client change his *1245 testimony and in effect, erase or conceal the truth.
Mr. Fields brother, Cleo Fields, also contributed to the doubt surrounding the defendant's case by evading direct yes or no questions and rambling through his answers trying to insert unsolicited testimony that he thought would assist his brother's case. He was obviously biased in his brother's favor and such bias rendered his testimony of little or no use. The Court further considered the fact that Cleo Fields was not domiciled nor did he reside at the Mickens Road address during the period of time in question. The Court found that there was a conspicuous absence of testimony from any of the present residents of 6539 Mickens Road. The defendant's mother, step-father and younger siblings could have possibly corroborated the defense's position in this case. Their absence leads the Court to presume that their testimony would not have aided the defendant.
The Court further noticed that the defendant's testimony at two points indicated that he "visited" the Mickens Road address. Tr. p. 91, lines 5-7 and p. 114 lines 4 & 5. These statements indicate to the Court again, that Mr. Fields was not domiciled at the Mickens Road address. One does not visit his own domicile. One goes home to his own domicile and visits family and friends with whom he is not domiciled.
The Court carefully considered the testimony of all other witnesses. Glenn Koepp is the Assistant Secretary of the Senate of the State of Louisiana. He is in charge of all redistricting activities relative to the senate. His office creates redistricting plans and creates maps to delineate the several senatorial districts in the state. He supplied the Court with exhibits P-1A, 1B and 1C.
Rose Mary Cannon, who is the supervisor of the election department in the Clerk of Court's Office in East Baton Rouge Parish. She supplied the Court with certified copies of two notices of candidacy filed by Wilson E. Fields. Exhibit P-4 is Mr. Fields Notice of Candidacy for Senatorial District number 15. Exhibit P-5 is Mr. Fields Notice of Candidacy for councilman in Metro District Five.
Mary Gay Nilson is the supervisor of the mortgage department of the East Baton Rouge Parish Clerk of Court. She testified that there was no notice of intent to change domicile filed in the records at the Clerk of Courts Office. Mr. Fields further acknowledged this to be a true fact.
Nat Bankston, Register of Voters, in East Baton Rouge Parish, supplied the Court Exhibit P-9, the defendant's voter registration history in the parish. Mr. Bankston also testified relative to the senatorial district of the Mickens Road address and the McClelland Drive address. He also testified that students were allowed to vote in precincts other than that of their residence.
Mr. Don Nijoka, the Chief Administrator Officer to the Metro Council, testified that Mr. Fields' official address relative to Metro Council business was 5665 McClelland Drive from November of 1992 until April 20, 1995. From April 20, 1995, to date his address was given at 4330 Victoria Drive. Exhibit P-7 included the address documents, and others. Exhibit P-8 was the Metropolitan Council Districts map. Mr. Nijoka also supplied Exhibit D-3, which were additionally documents not included in P-7. Exhibit D-4 was the East Baton Rouge and City of Baton Rouge Plan of Government which indicated in section 2.03 that residency of a district is the standard of qualification for city councilmen rather than domicile as required for the legislature.
Rehena Sharp, a supervisor for the Customer Service Center for Entergy Corporation, supplied the utility account history of Mr. Wilson E. Fields at McClelland and Victoria Drive. Mr. Fields' turn on date for apartment 202 on McClelland Drive was May 15, 1989. Utilities were then was transferred to apartment 233 effective June 1, 1990. She further indicates that his utilities were transferred to 4330 Victoria Drive on January 30, 1995.
*1246 Mr. Greg Williamson, Customer Service Manager for the Baton Rouge Water Company testified and supplied an exhibit that showed that Mr. Fields had water service at Victoria Drive since January 27, 1995. That document became Exhibit P-10.
Jackie Sharp, Apartment Manager for Tiffany Square Apartments on McClelland Drive, testified that Mr. Fields leased apartments from May 15, 1989 through January 31, 1995. She supplied the Court with lease contracts, rental cards and receipts regarding Mr. Fields' apartments. She also testified that he slept there just about every night during that period and would see him coming and going pretty much regularly every day.
Elaine Simmons, Register at Southern University Law Center, testified and supplied Exhibit D-10 en globo, which basically indicated that all law school and bar related mail was sent to Mr. Fields' Mickens Road address. The exhibits also indicated that Mr. Fields' designated his Mickens Road address as his permanent address and designated his McClelland Drive as his local address.
The Court considered all statutes previously cited and jurisprudence including the following:
Messer v. London, 438 So.2d 546 (La.1983)
Mix v. Blanchard, 318 So.2d 125 (La.App. 4th Cir.), writ denied, 320 So.2d 547 (La. 1975)
Charbonnet v. Hayes, 318 So.2d 917 (La. App. 4th Cir.1975), writ denied, 320 So.2d 201 (La.1975)
Sheets v. Sheets, 612 So.2d 842 (La.App. 1st Cir.1992)
Monk v. Monk, 243 La. 429, 144 So.2d 384 (1962)
Slocum v. DeWitt, 374 So.2d 755 (La.App. 3rd Cir.1979); writ refused
Villane v. Azar, 566 So.2d 645 (La.App. 4th Cir.1990)
Mix v. Alexander, 318 So.2d 130 (La.App. 4th Cir.1975)
Broussard v. Romero, 607 So.2d 979 (La. App. 3rd Cir.1992)
Successions of Rhea, 227 La. 214, 78 So.2d 838 (1995)

CONCLUSION
After close consideration of the testimony of the witnesses mentioned above, the exhibits, statutes, constitutional article, jurisprudence and after intense observation of the defendant, his brother, other witnesses, the attorneys, and the audience, the Court finds that the plaintiff has carried his burden of proof in proving that the defendant had no intent to continue his domicile at 6539 Mickens Road but, instead intended to change his domicile to 5665 McClelland Drive and later to Victoria Drive. The Court further find that Wilson E. Fields is disqualified as a candidate for the office of State Senator, Senatorial District number 15 on the ground that he does not meet the domicile requirements set forth in Article 3, Sec. 4 of the Louisiana Constitution of 1994.
 /s/ Jack T. Marionneaux
 JUDGE JACK T. MARIONNEAUX,
DIV. "D"
 18TH JUDICIAL DISTRICT COURT
NOTES
[1] Participating in the September 21, 1995 sitting were: Chief Judge Lottinger and Judges Shortess, Carter, Gonzales, Whipple, Fogg, Pitcher, Parro, Kuhn and Fitzsimmons and Judge Hillary Crain, pro tempore.
[2] A copy of the detailed reasons for judgment, containing the findings of fact and assessments of credibility, is attached. [Editor's Note: The reasons for judgment follow Chief Judge Lottinger's concurring and dissenting opinion.]